UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

ONOFRIO POSITANO,                     :
                                      :
            Plaintiff                 :
                                      :
      v.                              :  CIVIL NO. 3:CV-12-1234
                                      :
JOHN WETZEL, et al.,                  :  (Judge Kosik)
                                      :
            Defendants                :

**FILED**
**SCRANTON**

MAR 1 4 2013

PER _____
      DEPUTY CLERK

**MEMORANDUM**

This civil rights action filed pursuant to 42 U.S.C. § 1983 presents claims of

inadequate medical care under the Eighth Amendment by Plaintiff Onofrio Positano,

an inmate confined at the State Correctional Institution at Mahanoy ("SCI-

Mahanoy"), Pennsylvania. Presently before the court for consideration are motions to

dismiss filed by Defendant Lisiak (Docs. 14, 20), a motion to dismiss filed by the

Commonwealth Defendants (Doc. 39), and a motion for a temporary restraining order

filed by Plaintiff (Doc. 48).

I.    **Allegations in the complaint**

This action was originally filed in the Eastern District Court of Pennsylvania

and consists of a § 1983 complaint form and several attachments thereto.  In

construing the complaint liberally, Plaintiff appears to allege the following.  In

November of 2007, Plaintiff was confined in the Montgomery County Jail. He was taken to the Mercy Suburban Hospital were a CT scan was performed and showed mild plaque blockage in his coronary arteries. In January of 2008, he entered the Pennsylvania State Correctional System at SCI-Graterford and was later transferred to SCI-Mahanoy. At that time, Dr. Felipe Aries was the Medical Director at SCI-Mahanoy and told Plaintiff that nothing in the CT scan "excited him," but that he would order a new CT scan just to confirm. According to Plaintiff, the CT scan was never ordered.

Over the next two (2) years, Plaintiff experienced several mild to medium chest pain attacks. He was told that he was just experiencing muscular spasms or stomach problems such as acid reflux. At Easter 2010, Plaintiff states he experienced major pain in his chest radiating down his left arm and up into the left side of his neck. He was taken to St. Catherine's Hospital and admitted through the emergency room. He was told that he had heart muscle damage and needed to undergo a cardio stress test and a cardio catherization.

Upon his return to SCI-Mahanoy, Plaintiff was informed that "nothing the hospital said was true," and no tests were ordered. For the next 12-13 months, Plaintiff's chest pains became more frequent and stronger. When he would go to the prison's infirmary under "emergency status," he states he was given an EKG, told it was negative, and released back to his cell.

On May 31, 2011, Plaintiff states that he finally got the prison to agree to a cardio stress test even though Dr. Lisiak, the new Medical Director, was 97% positive that there was nothing wrong with his heart, that he had no blockage, and that no heart attacks had happened.

On the same date, the cardio stress test was performed and Plaintiff failed it. Dr. Dalassandro, the cardiologist at Wilkes-Barre General Hospital, told Plaintiff he needed a cardio-catherization. Following the catherization, Plaintiff was told he needed immediate quadruple bypass surgery. On June 1, 2011, a quadruple coronary bypass was performed. According to Plaintiff "3 of the 4 arteries were so clogged they had to totally bypass them and punch 3 holes in the top of [his] aorta to reconnect them.   They took 18 inches of artery from [his] left leg and 12 inches from [his] chest for graphs." (Doc. 3 at 10.)  Plaintiff was told this procedure would only be good for approximately 10 years.  At that time, Plaintiff would be 76 years old and need to undergo surgery again at his expense.

On July 23, 2011, Plaintiff states that he filed a grievance after a smoker was put into his cell.  He filed several request slips from July through August 2011, but they were ignored by the Unit Manager.  On July 25, 2011, Major Vuksta answered his grievance by denying it and calling it frivolous, even though two medical single cells were available.  According to Plaintiff, this demonstrates deliberate indifference to his medical condition and puts him in danger.

On August 25, 2011, Plaintiff states that his blood pressure and heart rate were extremely high. Dr. Lisiak told him that he did not understand what was causing the problems. Although Plaintiff requested to see the cardiologist on several occasions, Lisiak made no mention of it. On September 1, 2011, Plaintiff requested to move to another housing unit due to again being celled with a smoker. Unit Manager Mason ignored Plaintiff's medical restriction of being in a non-smoker cell.

On October 6, 2011, a heart echosound was performed. According to Dr. Lisiak, Plaintiff's aortic artery was constricting and there was fluid around his heart. Plaintiff states he was finally taken out to see a cardiologist on October 13, 2011. He was informed by the cardiologist that his heart valves were leaking, his nitro-glycerin patch should have been removed in July of 2011, and that the wrong medication was prescribed by Dr. Lisiak. The cardiologist also informed Plaintiff that the time in which he will again need surgery is being dramatically cut by 1½ - 2 years.

As relief, Plaintiff seeks monetary damages and injunctive relief in the form of the suspension of Defendants' medical licenses and a transfer to a community corrections center.

## II. Defendant Lisiak's Motion to Dismiss pursuant to Fed. R. Civ. P. 41(b)

Defendant Lisiak has filed a motion seeking to dismiss any and all claims of medical malpractice against him in the complaint pursuant to Fed. R. Civ. P. 41(b). The basis of the motion is Plaintiff's failure to file the requisite Certificate of Merit

pursuant to Pennsylvania Rule of Civil Procedure 1042.3. Pennsylvania Rule of Civil Procedure 1042.3 is a substantive rule that is required to be followed in federal actions that allege medical malpractice. The Rule provides that "[i]n any action based on an allegation that a licensed professional deviated from an acceptable professional standard, the attorney for the plaintiff, or the plaintiff if not represented, shall file with the complaint or within sixty days after the filing of the complaint, a certificate of merit." Pa. R. Civ. P. 1042.3(a). This court has previously held that Rule 1042.3(a) applies to cases in federal court. See Levi v. Lappin, Civ. No. 1:CV-07-1839, 2009 WL 1770146 (June 22, 2009).

Where a plaintiff fails to file a required Certificate of Merit within sixty (60) days of the commencement of the action, and has neither moved for an extension of time or a judicial determination that a Certificate of Merit is unnecessary, a defendant may move for a judgment of non pros against the plaintiff. See Pa. R. .Civ. P. 1042.7(a).

Defendant Lisiak states that he provided Plaintiff with notice on December 1, 2011, of his intention to seek dismissal of his malpractice claim against him for failure to file a certificate of merit pursuant to Pa. R. Civ. P. 1042.6. Plaintiff thereafter had thirty (30) days from the notice to file his certificate of merit or his

5

claim may be dismissed.[1]  Defendant filed the instant motion to dismiss on January 4,

2012, arguing that the thirty (30) day time period expired, and moving for the

dismissal of all claims of medical professional liability pursuant to Fed. R. Civ. P.

41(b) for failure to file a Certificate of Merit.  (Doc. 20.)

On January 11, 2012, Plaintiff filed a document entitled "Motion to Deny

Motion of Defendant John Lisiak, Jr., D.O. to Dismiss Pursuant to Federal Rule

41(b)."[2]  (Doc. 24.)  This filing will be construed to be Plaintiff's response to

Defendant's pending motion.  In the filing, Plaintiff claims that he never received a

copy of Defendant's Notice of his intention to move for judgment of non pros and

seeks thirty (30) days within which to file a Certificate of Merit.

Because Defendant was not required to provide Plaintiff with any such notice,

it becomes irrelevant that Plaintiff did not receive the notice.  The fact remains that to

the extent Plaintiff seeks to pursue a claim against Lisiak based upon any failure to

adhere to the requisite professional standards of care in the medical treatment of his

heart condition,  Plaintiff falls squarely within Rule 1042.3's Certificate requirement.

The failure to timely file a Certificate of Merit in support of his claims, or

alternatively to move for an extension of time or a judicial determination that the

---

[1] The notice requirement has been declared to be procedural and thus inapplicable in federal courts.  As such, a defendant in federal court may move for judgment of non pros in a Rule 12 motion to dismiss without prior notice.  See Kennedy v. City of Lebanon, No. 1:11-CV-0382 (M.D. Pa. Dec. 21, 2011)(Jones, J.).

[2] Plaintiff filed a duplicate copy of this document on July 26, 2012.  (Doc. 37.)

same is unnecessary, would appear to be fatal to his professional negligence claim in this court against Defendant Lisiak.  However, based upon the court's disposition of Lisiak's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) which follows, the court declines to exercise jurisdiction over any state claim Plaintiff may have against Lisiak.  Without passing judgment as to the ultimate success of any such claim, Plaintiff is free to pursue any medical malpractice claim in the state court.  As such, Lisiak's pending motion to dismiss the medical malpractice claim pursuant to Fed. R. 41(b) will be denied as moot.

## III.   Motions to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6)

### A.   Standard

Defendants move to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) on the basis of failure to state a claim upon which relief can be granted.  When ruling on a motion to dismiss under Rule 12(b)(6), the court must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Gelman v. State Farm Mut. Auto. Ins. Co., 583 F.3d 187, 190 (3d Cir. 2009)(quoting Phillips v. County of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008)); see also Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007)(quoting Evancho v. Fisher, 423 F.3d 347, 350 (3d Cir. 2005)).

Federal notice and pleading rules require the complaint to provide "the

defendant notice of what the ... claim is and the grounds upon which it rests."

Phillips, 515 F.3d at 232 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555

(2007)).  To test the sufficiency of the complaint in the face of a Rule 12(b)(6)

motion, the court must conduct a three-step inquiry.  See Santiago v. Warminster

Twp., 629 F.3d 121, 130-31 (3d Cir. 2010).  In the first step, "the court must 'tak[e]

note of the elements a plaintiff must plead to state a claim.'"  Id. (quoting Ashcroft v.

Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1947, 173 L. Ed. 2d 868 (2009)).  Next, the

factual and legal elements of a claim should be separated; well-pleaded facts must be

accepted as true, while mere legal conclusions may be disregarded.  Id.; see also

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009).  Once the well-

pleaded factual allegations have been isolated, the court must determine whether they

are sufficient to show a "plausible claim for relief."  Ashcroft v. Iqbal, 556 U.S. 662,

129 S. Ct. at 1950, 173 L. Ed. 2d 868 (citing Twombly, 550 U.S. at 555 (requiring

plaintiffs to allege facts sufficient to "raise a right to relief above the speculative

level").  A claim "has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  Iqbal, 556 U.S. 662, 129 S. Ct. at 1949, 173 L. Ed. 2d 868.

When the complaint fails to present a prima facie case of liability, however, courts

should generally grant leave to amend before dismissing a complaint.  See Grayson v.

Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002); Shane v. Fauver, 213 F.3d

113, 116-17 (3d Cir. 2000).  With this standard in mind, the court will now address

the motions to dismiss filed by Defendant Lisiak and the Commonwealth Defendants.

### B.    Defendant Lisiak's 12(b)(6) motion

In the complaint, the specific allegations set forth against Dr. Lisiak are as

follows.  Plaintiff claims that on May 31, 2011, the prison agreed to give him a cardio

stress test even though Dr. Lisiak (at the time the new Medical Director at the prison)

was "97% positive" nothing was wrong with Plaintiff's heart.  After the test was

performed that day and Plaintiff failed, he ended up having quadruple bypass surgery.

Plaintiff also claims that on August 25, 2011, his blood pressure and heart rate

were high.  When he went to see Dr. Lisiak, Lisiak said he did not know why this

would be the case, and ignored Plaintiff's requests to see a cardiologist.  The only

other allegation that specifically references Lisiak is with respect to the cardiologist

visit on October 13, 2012.  At this visit, Plaintiff was told that his valves were

leaking, his nitro patch should have been removed in July of 2011, and that Lisiak

had prescribed the wrong medication.

Defendant Lisiak has filed a motion to dismiss the claims set forth against him

in the complaint.  The first basis for dismissal is Plaintiff's failure to exhaust his

claims.  Defendant states that Plaintiff commenced this action in the United States

District Court for the Eastern District of Pennsylvania on October 26, 2011.  (Doc. 3.)

At best, all of the allegations set forth against Dr. Lisiak occurred on or after May 31,

2011.

Defendant maintains that Plaintiff has procedurally defaulted on his claims by

failing to exhaust his available administrative remedies as required by 42 U.S.C. §

1997e(a). This section provides as follows:

> No action shall be brought with respect to prison conditions
> under Section 1979 of the Revised Statutes of the United
> States (42 U.S.C. 1983), or any other federal law, by a
> prisoner confined in any jail, prison, or other correctional
> facility until such administrative remedies as are available
> are exhausted.

Pursuant to 42 U.S.C. § 1997e(a), the exhaustion of available administrative

remedies is mandatory. Booth v. Churner, 532 U.S. 731, 739 (2001). The

"exhaustion requirement applies to all inmate suits about prison life, whether they

involve general circumstances or particular episodes, and whether they allege

excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002). A

prisoner must "exhaust all available administrative remedies" regardless of whether

the administrative process may provide the prisoner with the relief that he is seeking.

Nyhuis v. Reno, 204 F.3d 65, 75 (3d Cir. 2000). "[I]t is beyond the power of [any]

court ... to excuse compliance with the exhaustion requirement, whether on the

ground of futility, inadequacy or any other basis." Id. at 73, citing Weinberger v.

Salfi, 422 U.S. 749, 766 (1975). The PLRA "completely precludes a futility

exception to its mandatory exhaustion requirement. Nyhuis, 204 F.3d at 71. Thus,

prisoners are required to exhaust available administrative remedies prior to seeking

relief pursuant to 42 U.S.C. § 1983 or any other federal law. Jones v. Bock, 127 S.

Ct. 910, 918-19 (2007).  Nevertheless, "failure to exhaust is an affirmative defense

that must be pled and proven by the defendant." Brown v. Croak, 312 F.3d 109, 111

(3d Cir. 2002) (citing Ray v. Kertes, 285 F.2d 287, 295 (3d Cir. 2002)).

The PLRA mandates that a prisoner "properly" exhaust his or her

administrative remedies before commencing suit in federal court. Woodford v. Ngo,

548 U.S. 81, 126 S. Ct. 2378, 2387 (2006).  Dismissal of an inmate's claim is

appropriate when a prisoner has failed to exhaust his available administrative

remedies before bringing a civil rights action. Ahmed v. Sromovski, 103 F.Supp.2d

838, 843 (E.D. Pa. 2000).  "[E]xhaustion must occur prior to filing suit, not while the

suit is pending." Tribe v. Harvey, 248 F.3d 1152 (6th Cir. 2000)(citing Freeman v.

Francis, 196 F.3d 641, 645 (6th Cir. 1999)).

"Proper exhaustion demands compliance with an agency's deadlines and other

critical procedural rules because no adjudicative system can function effectively

without imposing some orderly structure on the course of its proceedings." Id. at

2386.  Such requirements "eliminate unwarranted federal-court interference with the

administration of prisons, and thus seek [ ] to 'affor[d] corrections officials time and

opportunity to address complaints internally before allowing the initiation of a federal

case." Id. at 2387 (quoting Porter, 534 U.S. at 525.)  Failure to comply with

procedural requirements of the applicable prison's grievance system will result in a

11

procedural default of the claim. <u>Spruill v. Gillis</u>, 372 F.3d 218, 227-32 (3d Cir. 2004)("[P]rison grievance procedures supply the yardstick for measuring procedural default."). Procedural default is a question of law. <u>Id</u>. at 232.

The Pennsylvania Department of Corrections has an Inmate Grievance System which permits any inmate to seek review of problems that may arise during the course of confinement. 37 Pa. Code § 93.9(a) (West 2003); <u>see also</u> www.cor.state.pa.us, DC-ADM 804, Inmate Grievance System Policy. After an attempt to resolve any problems informally, an inmate may submit a written grievance to the prison Grievance Coordinator for initial review. An inmate may appeal the decision of the Grievance Coordinator to the Superintendent of the institution, and can finally appeal to the Secretary of the Department of Corrections Office of Inmate Grievances and Appeals. <u>See</u> <u>Booth v. Churner</u>, 206 F.3d 289, 292 n.2 (3d Cir. 2000)(discussing Pennsylvania's Inmate Grievance System).

Defendant points out that, in the complaint, Plaintiff sets forth information in Section IV of the complaint that addresses the issued of an inmate's "Exhaustion of Administrative Remedies." (Doc. 3 at 4-5.) Specifically, in Section IV. E, the complaint sets forth the following with regard to Plaintiff's participation in the administrative grievance process:

> E. If you did file a grievance, about the events described in the complaint, where did you file the grievance: *SCI Mahanoy to each proper department.*

> 1. Which claim(s) in this complaint did you grieve? *Smoker in cell; Nurse Ruth Connor misdiagnosis & treatment; total indifference.*
>
> 2. What was the result, if any? *Grievances denied and called frivolous nothing done. (See Exhibits IV & V).*
>
> 3. What steps, if any, did you take to appeal that decision? Describe all efforts to appeal the highest level of the grievance process. *Wrote letter to John Wetzel Sr. of the DOC and letter to Judge Phyllis Streitel and Petition for Modification letter to Gov. Corbett & Senator Greenleaf (See Exhibits VI, Vii, VIII, IX, X.)*

(Doc. 3 at 5.)

Based upon the foregoing statement of Plaintiff, and in reviewing the copies of grievances, responses thereto, and other documents attached to the complaint, Defendants maintain that the claims against Lisiak are subject to dismissal for failure to exhaust available administrative remedies.

For the reasons that follow, the court agrees.  In addition to Plaintiff's own comments with respect to his exhaustion efforts in the complaint, a review of the grievance documents submitted by Plaintiff clearly demonstrate that he failed to exhaust his claims against Lisiak prior to commencing this action, if at all.

First, with respect to the answers provided by Plaintiff on the face of the complaint regarding exhaustion, nothing contained therein references filing any grievance(s) against Lisiak at all, let alone with respect to the specific claims set forth in the complaint.  Second, attached to the complaint are documents relating to

Grievances #366107 and #373447. None of the matters at issue in either of these grievances is about conduct on the part of Lisiak. Rather, Grievance #366107 is with respect to actions of Defendant Ruth Connor when Plaintiff went to the medical department with chest pain and the manner in which Connor treated him. (Doc. 3, Ex. IV.) Grievance #373447 is with respect to conduct of Defendant Mason and relates to the issue of Plaintiff's placement in a cell with a smoker and the existence of a "no smoker cell restriction." (Id., Ex. V.) The only other exhibits consist of the following: (1) letters Plaintiff wrote to DOC Secretary Wetzel and Governor Thomas Corbett on April 20, 2011, wherein he states he is not complaining or requesting relief and does not relate to the claims set forth against Lisiak (Id., Ex. VI): (2) an Inmate Request to Staff dated 7/21/11 regarding the lack of a follow-up visit to a cardiologist that Lisiak told him he would receive[3] (Id., Ex. VIIII); and (3) a letter from Court of Common Pleas of Chester County Judge Phyllis Streitel to John Kerestes, Superintendent of SCI-Mahanoy, with respect to correspondence she had received from Plaintiff complaining about his medical concerns. (Id., Ex. X.)

The only other documents relating to the exhaustion of claims set forth in this action were recently accepted by the court as an amendment to the original complaint on March 11, 2013. (Doc. 56.) While the court realizes that Defendant did not have

---

[3] The name of the medical personnel that responded to the request is illegible, but it clearly was not Lisiak. In any event, Plaintiff was advised that an appointment had been scheduled for him with the outside surgeon.

a chance to supplement his motion to dismiss in order to address the additional exhibits to the complaint, such is not necessary in that they do not impact the granting of the instant motion.

The exhibits added to the complaint consist of a response to Grievance #395083 filed by Plaintiff from the Facility Manager and the Secretary's Office of Inmate Grievances and Appeals with respect to whether a special diet had been ordered for Plaintiff (Doc. 36 at 3-4), and documents relating to Grievance #404482 filed by Plaintiff with respect to the issue of a medical restriction for a non-smoker cell. (Id. at 5-9.) In reviewing the documents submitted with respect to both of these grievances, it is evident that both were filed by Plaintiff after the commencement of this lawsuit. As such, even if these grievances addressed claims against Lisiak, it is clear that Plaintiff did not exhaust his available administrative remedies prior to the time he filed his complaint. For example, the initial grievance with respect to #404482 was not filed until March 12, 2012.

As such, based upon the foregoing, the complaint and exhibits attached thereto demonstrate a failure by Plaintiff to exhaust the claims set forth in the complaint against Lisiak through the available prison grievance system prior to filing this action. Accordingly, the motion to dismiss will be granted on the basis of failure to

exhaust and all claims set forth against Defendant Lisiak will be dismissed.[4]

## C.   Commonwealth Defendants' 12(b)(6) motion

The Commonwealth Defendants move to dismiss the claims set forth against them on the basis of several grounds.  They first maintain that Plaintiff has failed to exhaust his available administrative remedies.  In liberally construing the complaint, the claims set forth against these Defendants are as follows: (1) Defendants failure to order tests following Plaintiff's return to the prison from St. Catherine's Hospital post-Easter 2010 and, for the following 12-13 months, the lack of care received in response to his complaints of chest pain; (2) Defendant Mason's deliberate indifference when she ignored his medical restriction and his requests to not be celled with a smoker; and (3) Defendant Vuksta's deliberate indifference when he denied Plaintiff's grievance about Mason ignoring his requests about being celled with a smoker.

In arguing that Plaintiff's claims are unexhausted, Defendants point to Plaintiff's statements in the complaint with respect to his exhaustion efforts as previously set forth above in addressing Defendant Lisiak's motion.  (See Doc. 3, Compl. at 5, Section VI. E.)  The court will not reiterate the substance of the exhibits attached to the complaint, as they are thoroughly discussed above.  Rather, we will

---

[4] Because the court finds the issue of exhaustion to be dispositive, the other grounds for dismissal raised by Defendant Lisiak in his motion to dismiss will not be addressed.

delve into the analysis of the Commonwealth Defendants' argument with respect to whether the complaint demonstrates a failure to exhaust on Plaintiff's part based upon the complaint and the exhibits attached thereto.

Defendants maintain that with respect to Grievances #366107 and 373447, although Plaintiff raised complaints with respect to Defendant Connor (#366107) and Defendant Mason (#373447), he failed to appeal these grievances to final review. Plaintiff argues that after he received responses to his initial level review requests, he wrote letters to DOC Secretary Wetzel and Governor Thomas Corbett. Regardless, neither of these letters mentioned a grievance number and each specifically stated that the letter was not a complaint or request for relief. In addition, the letters did not raise the issues set forth in the grievances. Plaintiff's complaints were not submitted through the required levels of the DOC's Inmate Grievance System. Neither of these grievances were exhausted to final review with the Secretary's Office of Inmate Grievances and Appeals.

Further, in examining the exhibits recently added to the complaint as amendments (Doc. 36), it is clear that Grievance #395083, although pursued through final appeal, was with respect to an issue not set forth in this action, and Grievance #404482, also appealed through the final level of review, was not exhausted at the time the instant complaint was filed. In fact, the initial grievance with respect to #404482 which addresses the matter of Defendant Mason and the non-smoker cell

restriction was not filed until March 12, 2012, almost five (5) months after Plaintiff commenced this lawsuit. For these reasons, it is clear that Plaintiff failed to exhaust his administrative remedies with respect to any claims raised against the Commonwealth Defendants at the time this action was filed. For these reasons, their motion to dismiss will be granted.[5]

## IV.   Plaintiff's Motion for Temporary Restraining Order

Also pending is a motion seeking a temporary restraining order filed by Plaintiff on January 24, 2013, wherein he seeks proper medical care. (Doc. 48.) A request for preliminary injunctive relief is governed by Rule 65 of the Federal Rules of Civil Procedure and judged against exacting legal standards. As the United States Court of Appeals for the Third Circuit has explained: "Four factors govern a district court's decision whether to issue a preliminary injunction: (1) whether the movant has shown a reasonable probability of success on the merits: (2) whether the movant will be irreparably injured by denial of the relief; (3) whether granting preliminary relief will result in even greater harm to the nonmoving party; and (4) whether granting the preliminary relief will be in the public interest." Gerardi v. Pelullo, 16 F.3d 1363, 1373 (3d Cir. 1994)(quoting SI Handling Systems, Inc., v. Heisley, 753 F.2d 1244,

---

[5] The Commonwealth Defendants also raise alternative arguments in support of their motion to dismiss. While Defendants arguments that Plaintiff has failed to allege any personal involvement on behalf of Defendants Kerestes, Cerullo and Wetzel is well taken, the court will not address these arguments in that the exhaustion dismissal is dispositive as to all Defendants.

1254 (3d Cir. 1985)).  See also Highmark, Inc. v. UPMC Health Plan, Inc., 276 F.3d 160, 170-71 (3d Cir. 2001).

A preliminary injunction is not granted as a matter of right.  Kerschner v. Mazurkewicz, 670 F.2d 440, 443 (3d Cir. 1982)(affirming denial of prisoner motion for preliminary injunction seeking greater access to legal materials).  It is an extraordinary remedy.  Given the extraordinary nature of this form of relief, a motion for preliminary injunction places precise burdens on the moving party.  As a threshold matter, it is a movant's burden to show that the preliminary injunctive relief sought is the only way of protecting the Plaintiff from harm.  See Campbell Soup Co. v. ConAgra, Inc., 977 F.2d 86, 91 (3d Cir. 1992).

For an inmate to sustain his burden of proof that he is entitled to a preliminary injunction under Fed. .R. Civ. P. 65, he must demonstrate both a reasonable likelihood of success on the merits, and that he will be irreparably harmed if the requested relief is not granted.  Abu-Jamal v. Price, 154 F.3d 128, 133 (3d Cir. 1998); Kershner, 670 F.2d at 443.  If the movant fails to carry his burden on either of these elements, the motion should be denied since a party seeking such relief must "demonstrate *both* a likelihood of success on the merits and the probability of irreparable harm if relief is not granted." Hohe v Casey, 868 F.2d 69, 72 (3d Cir. 1989)(emphasis in original)(quoting Morton v. Beyer, 822 F.2d 364 (3d Cir. 1987)).

The power of this Court to issue preliminary injunctions is also limited and

19

circumscribed by the mootness doctrine.  The mootness doctrine recognizes a

fundamental truth in litigation: "[i]f developments occur during the course of

adjudication that eliminate a plaintiff's personal stake in the outcome of a suit or

prevent a court from being able to grant the requested relief, the case must be

dismissed as moot." Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 698-99 (3d

Cir. 1996).  In this particular case, the court has addressed motions to dismiss filed by

the Defendants and granted said motions.  As such, all claims against Defendants

have been dismissed, and there no longer remains a live case or controversy in this

action.  "A federal court has neither the power to render advisory opinions nor to

decide questions that cannot affect the rights of litigants in the case before them."

Preiser v. Newkirk, 422 U.S. 395, 401 (1975).  For these reasons, the pending motion

for injunctive relief will be dismissed as moot.[6]  An appropriate order follows.

---

[6] Plaintiff, of course, is free to pursue the claims that serve as the basis of his motion for injunctive relief in a new civil rights action should he so desire.

# UNITED STATES DISTRICT COURT
## FOR THE
## MIDDLE DISTRICT OF PENNSYLVANIA

ONOFRIO POSITANO,          :
                               :

      Plaintiff           :
                               :

   v.                 :    CIVIL NO. 3:CV-12-1234
                               :

JOHN WETZEL, et al.,        :    (Judge Kosik)
                               :

      Defendants       :

## ORDER

**NOW, THIS** *the* **14 DAY OF MARCH, 2013,** in accordance with the accompanying Memorandum, **IT IS HEREBY ORDERED AS FOLLOWS:**

1. Defendant Lisiak's motion to dismiss pursuant to Fed. R. Civ. P. 41(b) (Doc. 20) is **denied as moot**.

2. Defendant Lisiak's motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 14) is **granted,** and all claims set forth against Lisiak are dismissed in their entirety for failure to exhaust administrative remedies.

3. The Commonwealth Defendants' renewed motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) (Doc. 39) is **granted,** and all claims set forth against the Commonwealth Defendants are dismissed in their entirety for failure to exhaust administrative remedies.

4. Plaintiff's motion for temporary restraining order (Doc. 48) is **dismissed as moot**.

5. The Clerk of Court is directed to close this case.

6. Any appeal from this order will be deemed frivolous, lacking in probable cause and not taken in good faith.

_____

EDWIN M. KOSIK
United States District Judge